IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JANEL CASE, | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:17CV741 |
| | ) | |
| ALEX M. AZAR, II, Secretary of the United States Department of Health and Human Services, in his official capacity only,[1] | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Janel Case brought this action to obtain review of a final decision of the Medicare Appeals Council ("MAC") rejecting Plaintiff's contention that her use of the drug Myfortic should be covered under Medicare Part D ("the Plan"), the Medicare prescription drug benefit of the Medicare program, 42 U.S.C. § 1395w-101 *et seq.* The Court has before it the certified administrative record and cross-motions for judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff received a lung transplant in 2005, which was covered by a commercial health insurance plan. (AR 004, 0160.) The transplant was necessary as a result of pulmonary fibrosis related to treatment of Hodgkin's lymphoma. (*Id.*) Post-transplant, Plaintiff experienced "late

---

[1] Alex M. Azar, II, has succeeded Thomas E. Price, who was serving as the Secretary of the United States Department of Health and Human Services. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Alex M. Azar, II, should be substituted for Thomas E. Price as Defendant in this suit.

acute cellular rejection requiring high levels of immunosuppression drugs to maintain allograft function." (*Id.* at 004.) Since 2013, she has taken the immunosuppressant drug Myfortic. (*Id.* at 0153, 0221.) After enrolling in the Plan, effective January 2017 (*see id.* at 0143, 0219), Plaintiff sought Medicare Part D payment for the Myfortic. Although initially approving coverage of Myfortic (*id.* at 0222), after conducting an audit, the Plan denied coverage because "the drug was not being prescribed for a medically accepted indication as defined by Medicare law." (*Id.* at. 0004, 0225.) Plaintiff then initiated an administrative appeal through the appropriate appellate recourse available to dissatisfied Medicare Part D enrollees. (*Id.* at 0004, 0168-0169.) "On further appeal, the Independent Review entity (IRE) denied coverage on the same grounds: that there are no citations in the Medicare approved compendia that support the use of Myfortic for the diagnosed condition." (*Id.* at 0004 *citing* 0169.) "The IRE also noted that it could not consider making an exception based on medical necessity because Myfortic, as prescribed, does not meet the definition of a Medicare Part D drug." (*Id.* at 0004 *citing* 0169.)

As an element of the appellate process, Plaintiff received a hearing by an Administrative Law Judge ("ALJ"). (*Id.* at 0715-0734.) On May 19, 2017, the ALJ issued a decision, which was unfavorable to Plaintiff. (*Id.* at 0023-0029.) The ALJ determined that Myfortic does not meet the definition of a covered Part D drug because it is not prescribed for a medically accepted indication and is not supported by the Medicare approved compendia. (*Id.* at 0028.) The ALJ noted that the medically accepted indication for Myfortic is for prophylaxis of organ rejection in adult patients receiving kidney transplants, which is not applicable to Plaintiff. (*Id.*

2

at 0027, 0032.) In closing, the ALJ recognized the gravity of Plaintiff's circumstances but concluded that she had no authority to find that the drug is a Medicare Part D drug for purposes of the Plan's coverage. (*Id.* at 0029.)

Plaintiff then appealed to the MAC. (*Id.* at AR 0010.) On June 13, 2017, the MAC issued a decision, which was unfavorable to Plaintiff. (*Id.* at 0001-0008.) The MAC "concur[red] with the ALJ that the Plan is not required to cover Myfortic for [Plaintiff] because it is not being prescribed for a medically accepted indication." (*Id.* at 0006.) This decision represented the final agency decision of the Secretary of the Department of Health and Human Services. Having exhausted her administrative remedies, Plaintiff filed the instant civil suit for judicial review of the final agency decision.

## II. STANDARD FOR REVIEW

Plaintiff brought the instant action pursuant to 42 U.S.C. § 1395w-104(h)(1), which incorporates the rights of appeal and judicial review provision of 42 U.S.C. § 1395w-22(g)(5). Also, this action was brought pursuant to 42 U.S.C. § 405(g), the basic judicial review provision of the Social Security Act.[2] Under 42 U.S.C. § 405(g), a court's "review of the Secretary's final decision . . . is to be based solely on the administrative record, and the Secretary's findings of fact, if supported by substantial evidence, shall be conclusive." *See MacKenzie Med. Supply, Inc.*

---

[2] In addition, judicial review in this matter is also governed by the Administrative Procedure Act ("APA"), "which provides that final agency action shall be upheld absent a finding that it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Almy v. Sebelius*, 749 F. Supp. 2d 315, 322 (D. Md. 2010) (quoting 5 U.S.C. § 706(2)(A)). "Review under the APA is highly deferential . . . and the agency action enjoys a presumption of validity." *Weiss v. Azar*, No. CV ELH-17-1127, 2018 WL 6478025, at *4 (D. Md. Dec. 7, 2018) (unpublished) (citation omitted).

*v. Leavitt,* 506 F.3d 341, 346 (4th Cir. 2007). Substantial evidence has been defined by the Court of Appeals for the Fourth Circuit as

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted). Judicial review does not permit this Court to weigh the evidence or to make credibility assessments, because it is the Secretary's ultimate responsibility to make findings of fact and resolve conflicts in the evidence. *Rudman v. Leavitt*, 578 F. Supp. 2d 812, 814-15 (D. Md. 2008) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). In addition to reviewing for substantial evidence, the Court also looks to ascertain whether the Secretary applied the correct legal standards. *Bryan v. Sec'y of HHS*, 758 F. Supp. 1092, 1096 (E.D.N.C. 1990) (citations omitted).

## III. DISCUSSION

The parties' dispute in this action arises out of whether Myfortic is covered under the Plan such that Plaintiff's Medicare insurance would be responsible for the costs. As previously noted, the MAC "concur[red] with the ALJ that the Plan is not required to cover Myfortic for [Plaintiff] because it is not being prescribed for a medically accepted indication." (AR 0006.) The central issue here surrounds the meaning and scope of the statutory definition of a covered Part D drug. A covered Part D drug is defined by statute at 42 U.S.C. § 1395w-102(e)(1):

4

> Except as provided in this subsection, for purposes of this part, the term "covered part D drug" means--
>
> > **(A)** a drug that may be dispensed only upon a prescription and that is described in subparagraph (A)(i), (A)(ii), or (A)(iii) of section 1396r-8(k)(2) of this title; or
> >
> > **(B)** a biological product described in clauses (i) through (iii) of subparagraph (B) of such section or insulin described in subparagraph (C) of such section and medical supplies associated with the injection of insulin (as defined in regulations of the Secretary),
> >
> > *and such term includes* a vaccine licensed under section 262 of this title (and, for vaccines administered on or after January 1, 2008, its administration) and any use of a covered part D drug for a medically accepted indication (as defined in paragraph (4)).

42 U.S.C. § 1395w-102(e)(1) (emphasis added). The term "medically accepted indication" is defined as: (1) a used approved by the Federal Food, Drug, and Cosmetic Act ("FDA"); or (2) a use "which is supported by one or more citations included or approved for inclusion in any of the compendia described in subsection (g)(1)(B)(i) of this section." 42 U.S.C. § 1396r-8(k)(6). The compendia include:

> (I) the American Hospital Formulary Service Drug Information;
>
> (II) the United States Pharmacopeia–Drug Information (or its successor publications);[3] and
>
> (III) the DRUGDEX Information Systems.

42 U.S.C. § 1396r-8(g)(1)(B)(i).

---

[3] The United States Pharmacopeia–Drug Information is no longer published. *See* AR 0006; *see also In the Case of D.W.*, Medicare Appeals Council, Docket Number: M-11-813, 2011 WL 6026025, at *2 n.1 (Mar. 17, 2011) (unpublished).

5

Here, the Court must determine whether, in order to be a covered Part D drug, Plaintiff's use of Myfortic must satisfy the "medically accepted indication" criteria stated in 42 U.S.C. § 1396r-8(k)(6), or whether the "medically accepted indication" criteria merely provides an alternative definition for a covered drug. *See* 42 U.S.C. § 1395w-102(e)(4)(A)(ii). Relying upon the holding in *Layzer v. Leavitt*, 770 F. Supp. 2d 579 (S.D.N.Y. 2011), Plaintiff essentially argues that she need not meet the "medically accepted indication" criteria and that Myfortic falls under the definition of a "covered part D drug" because it is FDA approved. (Docket Entry 17 at 5-8.) Defendant contends that *Layzer* both ignores the plain meaning of 42 U.S.C. § 1395w–102(e)(1) and fails to accord proper deference to the Secretary's regulation at 42 C.F.R. § 423.100. (Docket Entry 19 at 12.) The undersigned agrees with the latter.

In recent years, several district courts have had occasion to analyze 42 U.S.C. § 1395w-102(e)(1), and most of them have concluded that the term "medically accepted indication" is an element of the statutory definition of "covered part D drug." *See Brew v. Burwell*, 263 F. Supp. 3d 431 (W.D.N.Y. 2017); *Roeder v. Burwell*, 197 F. Supp. 3d 887, 889-90 (E.D. Va. 2016) ("The language, context, and structure of Section 102(e)(1) compel the conclusion that Part D coverage is unambiguously limited to drugs prescribed for a 'medically accepted indication.' . . . [T]he] 'medically accepted indication' requirement . . . is definitional . . . ."); *Broome v. Burwell*, No. 6:14-cv-01248, 2015 WL 1526532 (D. Or. April 1, 2015) (unpublished); *Diamond v. Sec'y of Health & Human Servs.*, No. 1:13 CV 2481, 2015 WL 367010 at *5 (N.D. Ohio Jan. 27, 2015) (unpublished) ("The term 'medically accepted indication' is one element of the definition of a 'covered part D drug.'" (citation omitted)); *Nievod v. Sebellius*, No. C 11-4134 SBA, 2013 WL

503089, at *9 (N.D. Cal. Feb. 8, 2013) (unpublished) ("[T]he Court concludes that it is clear from the plain terms of the statute that a covered Part D drug is one that comports with the medically accepted indication requirement."); *Rickhoff v. Sec'y of Health & Human Servs.*, No. CV-11-2189, 2012 WL 6177411 at *1 (D. Ariz. Dec. 11, 2012) (unpublished) ("To qualify as a covered Part D drug, a drug must be used for a 'medically accepted indication.'"); *U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 1:11-CV-00962-WSD, 2012 WL 8020674, at *8 (N.D. Ga. Aug. 29, 2012) (unpublished) ("The statutory definition here may be inartfully drafted, but under the relevant canons of construction its meaning is clear: to be a 'covered Part D drug,' the drug must be used for a 'medically accepted indication.' "); *Kilmer v. Leavitt*, 609 F. Supp. 2d 750, 755 (S.D. Ohio 2009) ("[T]he Court is left with a regulation that ultimately defines a part D drug as subject to the limitation that it be used for a medically accepted indication."); *but see Layzer*, 770 F. Supp. 2d at 579 ("The statutory language that Congress used to define what is meant by 'covered part D drug,' along with the canons of statutory interpretation described above, make clear that the Act does not impose a Compendia Requirement.").

The court in *Nievod* provides a clear and well-supported analysis on this issue. First, it examined the structure of 42 U.S.C. § 1395w-102(e)(1) by acknowledging the use of the disjunctive term "or" to separate subparagraphs (A) and (B), followed by the use of the conjunctive term "and" at the introduction of the third paragraph. *Nievod*, 2013 WL 503089, at *6-7. That court concluded that "taken together, the provisions of the third paragraph
7

logically convey that the medically accepted indication requirement applies generally **and in addition to** the provisions of subsections (A) and (B)." *Id.* at *7 (emphasis in original).[4]

Next, the *Nievod* court considered the use of the phrase "and such term includes" in the statute. *Id.* at *7-8. Both subparagraphs (e)(1)(A) and (e)(1)(B) within the statute cross-reference 42 U.S.C. § 1396r-8(k)(2), which "identifies each of the aforementioned items as defining what constitutes a 'covered outpatient drug.'" *Id.* at *7. "Notably, the definition of a 'covered outpatient drug' excludes drugs 'used for a medical indication which is not a medically accepted indication.'" *Id.* (citation omitted). As a result, the court concluded that "it would be incongruous to construe section 1395w-102(e)'s reference to 'any use of a covered

---

[4] The Court in *Kilmer* summarized it similarly:

> [T]he statute provides in (A) two initial conditions that define a covered part D drug under that subparagraph: one, that the drug that may be dispensed only upon a prescription, and two, that the drug is also described in select provisions of 42 U.S.C. § 1396r-8(k)(2). This provides a substantial portion of the definition of—but not the complete definition of—a covered part D drug. The last paragraph of § 1395w-102(e)(1) then adds a third condition, specifically that any use of a drug (a drug that satisfies the first two requirements for a covered part D drug) be for a medically accepted indication.
>
> To read the statute otherwise would be to ignore the statute's use of the language "such term" in the clause "and such term includes . . . any use of a covered part D drug for a medically accepted indication . . . ." 42 U.S.C.A. § 1395w-102(e)(1). "Such term" refers back to "the term 'covered part D drug.'" *Id.* The specific reference is to covered part D drug, which means that the statutory scheme provides that the term *means* condition one (prescribed drug) and condition two (described-in-another-statute drug) and *includes* condition three (use is for medically accepted indication).

609 F. Supp. 2d at 753-54 (emphasis in original).

Part D drug for a medically accepted indication' as anything other than a specific circumscription on the definition of a covered Part D drug." *Id.*

The *Nievod* court next considered "the interplay between the reference to 'biological product' and 'vaccines' in the second and third paragraphs of section 1395w-102(e), respectively." *Id.* at *8. The second paragraph of section 1395w-102(e) defines "biological product" and provides cross-reference to 42 U.S.C. 1396r-8(k)(2)(B), which "specifically **excludes** vaccines." *Id.* (emphasis in original) (citation omitted). However, in the third paragraph of section 1395w-102(e), it provides that: "**and such term includes a vaccine** licensed under section 262 of this title (and, for vaccines administered on or after January 1, 2008, its administration) . . . ." 42 U.S.C. § 1395w-102(e)(1) (emphasis added). *Nievod* held that "[g]iven that the definition of a 'biological product' does not include a vaccine, it would be illogical to construe the reference to vaccines as [illustrative], when, in the preceding paragraphs, vaccines are expressly excluded." 2013 WL 503089, at *8. It is thus more logical to "construe the term 'includes' in this context as definitional." *Id.*

Finally, the *Nievod* court emphasized that an illustrative rather than definitional interpretation of the term "includes" under the third paragraph of (e)(1) "cannot be reconciled with the fact that Congress included a lengthy and detailed definition of 'medically accepted indication' within the statutory definition of 'covered Part D drug.' " *Id.* The definition of "medically accepted indication" under section 1395w-102(e) is divided into two parts, the first part applying to Part D drugs "used in an anticancer chemotherapeutic regimen," which incorporates the definition of "medically accepted indication" in Medicare Part B, codified at

9

42 U.S.C. § 1395x(t)(2)(B).  *See* 42 U.S.C. § 1395w-102(e)(4)(A)(i). The second part applies to any other covered Part D drug and incorporates a more limited definition of "medically accepted indication" codified at 42 U.S.C. § 1396r-8(k)(6).  *See* 42 U.S.C. § 1395w-102(e)(4)(A)(ii); *Nievod,* 2013 WL 503089, at *9 n.3 ("Unlike section 1396r-8(k)(6), the definition for medically accepted indication set forth in Medicare Part B is broader in that it permits the use of certain 'peer reviewed medical literature.' " (citation omitted)). The Court in *Nievod* concluded that "[t]he fact that Congress provided a detailed framework and different definitions for 'medically accepted indication' depending on the nature of the drug use, belies Plaintiff's assertion that the reference to the medically accepted indication requirement is merely 'illustrative' and not restrictive." *Id.* at *9.

Persuaded by the reasoning in *Nievod*, the undersigned concludes that "it is clear from the plain terms of the statute that a covered Part D drug is one that comports with the medically accepted indication requirement." *Id.*; *see also Roeder,* 197 F. Supp. 3d at 892; *Kilmer*, 609 F. Supp. 2d at 755.  This is also consistent with the Secretary's interpretation of the applicable Medicare regulations embodied in 42 C.F.R. § 423.100, although the Court need not reach this conclusion.[5]  That regulation defines a Part D drug as follows:

---

[5] *See Nievod*, 2013 WL 503089, at *10 ("While the statute at issue certainly is not a model of clarity, the Court has determined . . . that there is no ambiguity as to whether a covered Part D drug must be used for a medically accepted indication. But even if there were, the Secretary's interpretation . . . is both permissible and reasonable." (footnote omitted)); *Kilmer*, 609 F. Supp. 2d at 755 ("Because the relevant portion of the statute is not ambiguous, the Court does not reach the issues of reasonableness and deference.").

10

> (1) Unless excluded under paragraph (2) of this definition, any of the following if used for a medically accepted indication (as defined in section 1860D–2(e)(4) of the Act)—
> (i) A drug that may be dispensed only upon a prescription and that is described in sections 1927(k)(2)(A)(i) through (iii) of the Act.
> (ii) A biological product described in sections 1927(k)(2)(B)(i) through (iii) of the Act.
> (iii) Insulin described in section 1927(k)(2)(C) of the Act.
> (iv) Medical supplies associated with the injection of insulin, including syringes, needles, alcohol swabs, and gauze.
> (v) A vaccine licensed under section 351 of the Public Health Service Act and for vaccine administration on or after January 1, 2008, its administration.
> (vi) Supplies that are directly associated with delivering insulin into the body, such as an inhalation chamber used to deliver the insulin through inhalation.
> (vii) A combination product approved and regulated by the FDA as a drug, vaccine, or biologic described in paragraphs (1)(i), (ii), (iii), or (v) of this definition.

42 C.F.R. § 423.100.

The Secretary asserts that it should be entitled to substantial deference under *Chevron USA, Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837 (1984). Even if the Medicare statute at 42 U.S.C. § 1395w-102(e)(1) was ambiguous, the Secretary's own interpretation of the statute, in his regulations, would be entitled to substantial deference as a reasonable and permissible one. Under *Chevron*, a "court need not conclude that [an] agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." 467 U.S. at 843 n.11 (citations omitted). As stated by the Fourth Circuit, "*Chevron* deference of this sort stands at the heart of modern administrative law. It ensures that agency officials, who

11

are subject to greater political accountability and possess greater relevant expertise than judges, take the lead in implementing programs delegated to their care." *Schafer v. Astrue*, 641 F.3d 49, 61 (4th Cir. 2011) (citing *Chevron,* 467 U.S. at 865-66). Indeed, *Nievod* and other courts referenced herein held that if there was any ambiguity in Medicare statute at 42 U.S.C. § 1395w-102(e)(1), the Secretary's interpretation would be entitled to substantial deference. *See Roeder*, 197 F. Supp. 3d at 892; *Kilmer*, 609 F. Supp. 2d at 755-56; *Nievod*, 2013 WL 503089 at *9. The undersigned also agrees.

In sum, the MAC correctly found that Plaintiff did not take Myfortic for an FDA-approved use. (AR 0006.) Furthermore, it correctly found that Plaintiff did not take Myfortic for a use indicated in the Medicare-approved drug compendia. (*Id.*) Thus, Plaintiff did not use Myfortic for a "medically accepted indication" as defined at 42 U.S.C. § 1396r-8(k)(6). Therefore, the final agency decision of the Secretary is supported by substantial evidence and comports with the governing legal standards. Again, this Court acknowledges the gravity of Plaintiff's circumstances and what may seem "unjust on grounds of simple decency to [Plaintiff]." *Kilmer*, 609 F. Supp. 2d at 757. "But unfairness does not always equal unlawful, and there is no Medicare guarantee of comprehensive coverage." *Id.*

## IV. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Secretary's decision is legally correct and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Docket Entry 16) be **DENIED**, Defendant's Motion for Summary Judgment (Docket Entry 18) be

**GRANTED**, and the final agency decision of the Secretary be upheld.

_____
Joe L. Webster
United States Magistrate Judge

January 3, 2019
Durham, North Carolina